GAUDIN, Judge.
Both plaintiff Calvin A. Astredo and defendant Louisiana Power & Light Company have appealed from a district court judgment finding Astredo 66% per cent at fault and LP & L 3373 per cent responsible for injuries sustained by Astredo when an electric extension cord he was using to pull dead branches from a tree touched an uninsulated power line.
LP & L contends (1) that it breached no duty of care, (2) that Astredo was 100 per cent at fault for the incident, (3) that Astre-do’s landlord-landowner contributed to the accident and (4) that the award to Astredo was excessive.
Astredo argues on appeal (1) that the trial court’s conclusion that LP & L was partially at fault was not manifestly erroneous, (2) that Astredo was no more than 25 per cent negligent, (3) that the owner of the property acted reasonably and consequently was not responsible and (4) that the award was not excessive.
Astredo was awarded $259,448.71, reduced by 2/3rds because of the degree of negligence attributed to him.
We affirm the October 25, 1991 judgment of the 24th Judicial District Court, being of the opinion that the record is sufficiently supportive of the trial judge’s findings and determinations. The tree in question was a dead hackberry situated in the rear of residential property, (# 10 Fair-lane Drive, Metairie) rented by Astredo from Robert Layerle. The tree was close to but not actually on the ten-foot servitude; however, dead branches extended over and onto the servitude. The LP & L power line within the servitude was 32 feet in the air and carried 8,000 volts. Astredo mistakenly thought the line was insulated.
Layerle testified that he called LP & L three times asking that the company remove the dead tree or at least trim the branches. Layerle said that someone at the company said that an LP & L representative would come out but nobody ever came. Astredo stated that he also called LP & L about the tree, to no avail. Lay-erle then contacted professional tree-trimmers and was told that it would cost $500.00 to remove the tree. Layerle said that he couldn’t afford the expense.
*285 On December 18, 1985, Astredo decided to remove the dead limbs. He placed a 20-foot aluminum ladder against the tree and climbed to the top. He took a 50-foot electrical extension cord and was using it as a rope, throwing it above and around a limb and then pulling on the cord until the limb fell. The accident occurred when the cord glanced off a limb and hit the power line. Electricity surged through the cord and struck Astredo, causing severe burns.
The Supreme Court of Louisiana has spelled out in detail the duties owed by a power company that installs uninsulated electrical lines. In Levi v. S.W. La. Elec. Membership Coop., 542 So.2d 1081 (La.1989), the Court held that a company that employs and maintains high power lines is required to exercise utmost care to reduce hazards as far as practicable. The Court said at page 1086:
“The power company complains that it should not be charged with recognition of any risk that takes effect through a victim’s negligence. But the ordinary reasonable person, and even more so the power company, is required to realize that there will be a certain amount of negligence in the world. When the risk becomes serious, either because the threatened harm is great, or because there is an especial likelihood that it will occur, reasonable care may demand precautions against ‘that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated.’ Murphy v. Great Northern R. Co., 2 Ir.Rep. 301 (1897); See Prosser and Keeton on Torts, supra, § 33 at p. 198; Restatement (Second) Torts, supra, § 302A. It is not due care to depend on the exercise of care by another when such reliance is accompanied by obvious danger. See Putt v. Daussat, 381 So.2d 955 (La.App. 4th Cir.1980); Dragotis v. Kennedy, 190 Minn. 128, 250 N.W. 804 (1933); Prosser and Keeton, Id.
“Moreover, the power company had actual knowledge of previous instances of oil field workers’ negligence or inattentiveness in moving erect masts under or near the uninsulated power lines. Its own employee testified that he had warned other roustabout crews of danger on two previous occasions when they drove under the uninsulated electric line on a board road with their masts partially or fully erect.”
In defending against Astredo in district court, LP & L pointed out that the tree was neither actually on the servitude nor dangerously close to the power line. Had the tree been what LP & L calls a “danger tree,” the problem would have gotten the power line’s immediate attention. Furthermore, LP & L said its records do not show a request by either Layerle or Astredo to trim or remove the tree.
In finding LP & L 33V3rd per cent at fault, the trial judge, according to the assigned “Reasons for Judgment” and “Findings of Fact”, believed Layerle and Astredo when they said their telephone complaints went unanswered. Also, the trial judge found that while the tree itself was not within the servitude, the rotten limbs “... reached over and under the defendant’s power lines.” Thus, the trial judge concluded that the power company, after notice, did not respond to a dangerous situation. If Layerle and Astredo were found creditable, as apparently they were, the record supports a finding of partial negligence by LP & L.
The trial judge did not pinpoint reasons for finding Astredo mostly negligent; however, the “Reasons for Judgment” and “Findings of Fact” did describe what As-tredo did while trying to dislodge the limbs from above and under the power line. The trial judge then stated that “... both plaintiff and defendant were guilty of negligence, with a majority of the fault being attributed to the plaintiff.” We are unable to say that these findings were manifestly erroneous. Likewise, the finding that Lay-erle did not contribute to the accident was not clearly wrong. Layerle had no knowledge that Astredo was going to try and remove the dead limbs.
Astredo, 30 years of age at the time of the accident, was employed as a Hotard tour bus operator. He sustained burn injuries to much of his body and multiple frac *286 tures of the spine. He was hospitalized for a month and a half and for much of that time he underwent painful debridement of his burns twice a day. During these procedures, dead tissue was removed. He then had skin grafts. His left hand was so badly burned that he had to have a flap graft in which his hand was attached to his groin for three weeks. Medical expenses totalled $23,140.16. Astredo has permanent scars and he cannot normally use his left hand. No longer able to work for Hotard, Astredo is now a security guard.
The district court set overall damages at $259,448.71, which included medical expenses, $11,308.55 for lost wages, $100,-000.00 for loss of future income and $125,-000.00 for past, present and future physical and mental pain and suffering. These awards were within the trial judge’s discretion.
We affirm the judgment of the district court, with LP & L to pay costs of this appeal.
AFFIRMED.
DUFRESNE, J., dissents in part.